IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 11-0586 SI |
| Plaintiff, | |
| v. | **ORDER GRANTING MOTION TO DISMISS INDICTMENT** |
| LISBETH MARLUCI RESULEO-FLORES, | |
| Defendant. | |

Defendant Lisbeth Resuleo-Flores ("Resuleo") moves for dismissal of the indictment against her.[1] The government filed its opposition to the motion on January 19, 2012. A hearing was held on February 10, 2012, in which the Court asked for supplemental briefing on the issue of whether Immigration Judges ("IJs") have a duty to inform aliens before them about the alien's potential eligibility for U-Visas. The parties have briefed that issue. A second hearing was held on March 2, 2012. Having read the papers and considered the parties' arguments, the Court hereby rules as follows.

**BACKGROUND**

On August 25, 2011, Resuleo was indicted for illegal reentry pursuant to 8 U.S.C. § 1326. The grand jury found that Resuleo, having been removed twice from the United States, was found in the Northern District of California without authorization. Resuleo seeks dismissal of the indictment on the grounds that the two prior removal orders violated her due process rights, and, therefore, they cannot serve as the necessary predicates for the instant illegal reentry charge. She attacks her June 25, 2008

---

[1] The Court adopts the defendant's usage of only her surname, "Resuleo."

removal order (the "2008 Removal") by alleging that the immigration judge ("IJ") failed to inform her of her eligibility for a U-Visa as a victim of violence; she attacks the February 10, 2010 removal order (the "2010 Removal") by alleging that the IJ applied the incorrect legal standard in evaluating her reasonable fear claim under the Convention Against Torture ("CAT"). The underlying facts, gathered from the moving papers, removal orders, and attached declarations, are as follows.

Resuleo was born in 1986 in El Salvador. She came to the United States without authorization in 1998, at age twelve, as an unaccompanied minor following Hurricane Mitch. Between 1998 and 2007, Resuleo lived in Novato, California. In 2001, when she was 14 years old, her paternal uncle, Jorge Alberto Resuleo-Lara, tried to rape her. According to a supporting declaration attached by Resuleo,

> [Her uncle] pushed her against a wall in her home, began licking her neck and started pushing his body on top of her, digging his nails into her until she bled. Ms. Resuleo managed to escape his control when he knocked over a beer and knelt down to pick it up. She ran to the neighbors' home to tell them what was happening. The police were called and Ms. Resuleo reported to the police everything that her uncle did to her. She was then taken to the hospital.

Lawrence Decl. ¶ 4(b). Resuleo's uncle was arrested, and, sometime later, deported. It is not clear from the record whether Resuleo's uncle was deported as a direct result of his arrest from this incident. What is clear is that following the arrest, Resuleo's aunt convinced Resuleo to recant the story to the police. At Resuleo's 2008 Removal proceeding, the IJ found that "before the case went to trial, Respondent's aunt prevailed on her to tell the police that the uncle had not tried to rape her, and as a result, charges against the uncle were dismissed." West Decl., ¶ 14.

Approximately one year after the incident with her uncle, Resuleo became a member of the "18th Street" gang. Lawrence Decl. ¶ 4(c). She bears several gang-related tattoos from this affiliation. *Id.* On November 19, 2004, Resuleo was arrested on gang-related charges. Resuleo pled guilty to felony attempted grand theft from a person, with a misdemeanor gang enhancement. On September 26, 2005, Resuleo was sentenced to 230 days in jail and three years probation.

On September 11, 2006, as a result of the U.S. Department of Justice "Operation Community Shield," Ms. Resuleo came to the attention of and was processed by immigration authorities. Def.'s Mot. at 2 (*citing* Lawrence Decl. ¶ 4(f)). She was served with a Notice to Appear on a "date to be set"

for deportation proceedings. *Id.* However, her official Alien file states that her "deportation proceeding was deferred due to SUBJECT was a party [sic] of interest on an on-going investigation." *Id.* (*citing* Bates LRF 0102.) According to Resuleo's March 2008 Asylum Application, she was in fact actively working as an Immigration and Customs Enforcement ("ICE") informant investigating local gang activity. Lawrence Decl., Ex. A (LRF 0135) (I-589 Asylum Application, March 3, 2008). Resuleo stated that, "[w]hile in the United States, I cooperated with the U.S. Government as an informant. I wore wires and provided information and intelligence to the U.S. Government about the activities of local individuals affiliated or active in gangs." In her more recent March 28, 2011 asylum interview, Resuleo stated that she worked with ICE agent Raoul Cano, and that while on probation, she would go to Concord "with [ICE] and get paid," and that "some people got arrested because of me, they were making false passports." West Decl., Ex. H (LRF 0013).[2]

Resuleo was arrested a number of times while on probation. One arrest occurred on January 23, 2006 for a positive drug test; another on February 7, 2007, for violating the condition of probation prohibiting contact with gang members; and a third on December 22, 2007 for narcotics possession. Pl.'s Mot. at 2 (*citing* PSR at 8-9). Resuleo was taken into ICE custody on January 15, 2008, for removal proceedings.

### a. The 2008 Removal

From January to May of 2008, Resuleo was in removal proceedings in front of IJ Anthony Murry. The proceedings were continued five times in order for her to obtain counsel, which she failed to do. Her hearing was held on May 21, 2008 in front of IJ Murry, in which she proceeded *pro se*.

Resuleo submitted an I-589 Application for Asylum and Withholding of Removal, which also covered relief under the Convention Against Torture (the "CAT"). Lawrence Decl. ¶ 4(I)(citing LRF 131-42). Resuleo sought asylum or withholding of removal based on political opinion, membership in a particular social group, and the CAT. She cited fear based on her past role as an informant, arguing that "if people here inform gang members in El Salvador as to my role, I will immediately be targeted,

---

[2]The asylum officer found Resuleo's testimony detailed and credible. *Id.* at LRF 0007.

3

persecuted, tortured, and possibly killed." Lawrence Decl., Ex. A (LRF 0135). She also stated in her application that, "I am also afraid of my uncle who was deported to El Salvador because he tried to rape me when he was in the US. I called the cops on him." *Id.*

At the hearing, IJ Murry questioned Resuleo about her Uncle, as well as her apparent fear of the gang *mara-salvatrucha 13* ("MS-13"). Resuleo stated that she was afraid MS-13 members in El Salvador might hurt her because of her membership in the rival 18th-Street Gang. West Decl. ¶ 12. She denied fearing that the government of El Salvador would hurt her. *Id.*

IJ Murry issued an oral decision. Regarding her uncle, as noted above, IJ Murry recounted that "before the case went to trial, Respondent's aunt prevailed on her to tell the police that the uncle had not tried to rape her, and as a result, charges against the uncle were dismissed." West Decl. ¶ 14. No reference was made to U-Visa eligibility. Regarding her fear of gang retribution, IJ Murry found that "although the Respondent may have a subjective fear of persecution by the government of El Salvador, the evidence in the record does not show an objective basis for that fear." *Id.* The IJ denied Resuleo's claims for relief, and ordered her removal. She was subsequently removed in June 2008.

### b. The 2010 Reinstatement of Removal

On September 4, 2008, less than 3 months after her removal, Resuleo was found by Border Patrol near Carrizo Springs, Texas. On November 6, 2008, Resuleo pleaded guilty in the Western District of Texas to illegally reentering the United States in violation of § 1326. She was sentenced on March 25, 2009, to twelve months imprisonment followed by three years of supervised release.

On September 3, 2009, after finishing her custodial sentence, Resuleo was returned to ICE custody for removal proceedings. Having articulated a fear of returning to El Salvador, she was given a reasonable fear interview on September 29, 2009. The asylum officer concluded that Resuleo had not established a reasonable fear of persecution or torture if she returned to El Salvador. Upon review, IJ Richard Phelps agreed. He then reinstated Resuleo's earlier removal, and on February 10, 2010, Resuleo was removed for a second time to El Salvador.

### c. Resuleo's Second Return

According to Resuleo, while in El Salvador, she was repeatedly threatened by MS-13 and, in June 2010, was stabbed in the back by one of their members. Def.'s Mot. at 8. On July 4, 2010, she reentered the United States without inspection. *Id.* Nine months later, on March 3, 2011, Resuleo was arrested in San Rafael, California for disturbing the peace and disorderly conduct. After having been found by ICE agents, she reiterated a fear of returning to El Salvador, and was given another reasonable fear interview on March 28 and 29, 2011. West Decl., Ex. H (LRF 0004-0019). The asylum officer again found her credible, but found that she had not established a reasonable fear of persecution or torture if she were to return to El Salvador. *Id.* (LRF 0019).

On August 25, 2011, a grand jury returned the current indictment, charging Resuleo with illegal reentry based on her June 25, 2008 and February 10, 2010 removals. Resuleo then filed this motion to dismiss the indictment on December 2, 2011.

## LEGAL STANDARD

"A defendant charged with illegal reentry under 8 U.S.C. § 1326 has a Fifth Amendment right to collaterally attack his removal order because the removal order serves as a predicate element of his conviction." *United States v. Ubaldo-Figuero*, 364 F.3d 1042, 1047-48 (9th Cir. 2004) (*citing United States v. Mendoza-Lopez*, 481 U.S. 828, 837-38 (1987)). To sustain a collateral attack under § 1326(d), a defendant must demonstrate (1) that he exhausted all administrative remedies available to him to appeal his removal order, (2) that the underlying removal proceedings at which the order was issued improperly deprived him of the opportunity for judicial review, and (3) that the entry of the order was fundamentally unfair. 8 U.S.C. § 1326(d). An underlying removal order is "fundamentally unfair" if "(1) a defendant's due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects." *Ubaldo-Figuero*, 364 F.3d at 1048 (*citing United States v. Zarate-Martinez*, 133 F.3d 1194, 1197 (9th Cir. 1998)).

**United States District Court**
For the Northern District of California

**DISCUSSION**

Resuleo collaterally attacks both the 2008 and 2010 removals. She attacks her 2008 Removal on the grounds that IJ Murry failed to inform her of her alleged eligibility for a U-Visa, which grants victims of certain crimes temporary legal status and work eligibility in the United States.[3] She attacks the 2010 Reinstatement of Removal on the grounds that IJ Phelps applied the wrong legal standard in evaluating her reasonable fear claim under the CAT.

Resuleo's attack on her 2008 removal presupposes that IJs have a duty to inform aliens appearing before them of their apparent eligibility for U-Visas; the government disputes that supposition. The Court turns to that question first.

**1. Whether an IJ has an obligation to inform an alien as to the alien's apparent eligibility for a U-Visa**

Resuleo argues that IJ Murry failed to inform her of her eligibility for relief from removal, namely, her eligibility for a U-Visa. The Ninth Circuit has held that "where the record contains an inference that the petitioner is eligible for relief from deportation, the IJ must advise the alien of this possibility and give him the opportunity to develop the issue." *U.S. v. Arrieta*, 224 F. 3d 1076, 1079 (9th Cir. 2000). "Failure to so inform the alien is a denial of due process that invalidates the underlying deportation proceeding." *U.S. v. Muro-Inclan*, 249 F. 3d 1180, 1183-83 (9th Cir. 2001) (*citing Arrieta*, 224 F.3 at 1079).

An initial question before the Court is whether IJs must inform aliens about their apparent eligibility for U-Visas. That question implicates the source and scope of an alien's due process right to be informed of relief for which she is eligible. While the government agrees that the Ninth Circuit has interpreted the right to be informed of eligibility for relief as a due process right, the government argues that the source of that right is based in, and limited by, a federal regulation: 8 C.F.R. §

---

[3]According to Congress, "The purpose of this section is to create a new nonimmigrant visa classification that will strengthen the ability of law enforcement agencies to detect, investigate, and prosecute cases of domestic violence, sexual assault, trafficking of aliens, and other crimes described in section 101(a)(15)(U)(iii) of the Immigration and Nationality Act committed against aliens, while offering protection to victims of such offenses in keeping with the humanitarian interests of the United States. This visa will encourage law enforcement officials to better serve immigrant crime victims and to prosecute crimes committed against aliens." VTVPA, Pub.L. 106-386 at § 1513(a)(2)(A).

1240.11(a)(2). Section 1240.11(a)(2) states that, "the immigration judge shall inform the alien of his or her apparent eligibility to apply for any of the benefits *enumerated in this chapter* and shall afford the alien an opportunity to make application during the hearing." 8 C.F.R. § 1240(a)(2) (emphasis added). U-Visas, governed by 8 C.F.R. § 214.14, are not enumerated in the same chapter as Section 1240. Section 1240 is contained in the Code of Federal Regulations, Chapter V of Title 8, entitled "Executive Office for Immigration Review, Department of Justice"; but the regulation governing U-Visas (§ 214.14) falls within Chapter I of Title 8, entitled "Department of Homeland Security" ("DHS"). Therefore, according to the government, an IJ has no obligation to inform an alien of her eligibility for a U-Visa, whether or not she is apparently eligible. Moreover, the government argues, there is a reason for this: U-Visas are granted within the discretion of the DHS, not the IJs. According to the government, limiting the IJ's due process obligation to forms of relief within the IJ's jurisdiction makes sense.

The government has some historical support for its position. The Ninth Circuit's early opinions analyzing an IJ's obligation to inform an alien of relief found that obligation in the predecessor to Section 1240.11, Section 242.17.[4] *See Moran-Enriquez v. I.N.S.*, 884 F.2d 420, 422 (9th Cir. 1989); *Bu Roe v. I.N.S.*, 771 F.2d 1328, 1334 (9th Cir. 1985). Section 242.17 instructed that "[t]he immigration judge shall inform the respondent of his or her apparent eligibility to apply for any of the benefits enumerated in this paragraph and shall afford the respondent an opportunity to make application therefor during the hearing." *Id.* In *Moran-Enriquez*, the Ninth Circuit analyzed Section 242.17. The government had argued that the record must fully establish an alien's eligibility before the IJ's responsibility under Section 242.17 is triggered. The Ninth Circuit rejected that argument, stating that

> We do not read the regulation so grudgingly. Section 242.17(a) obviously is meant to prompt the IJ to help an alien explore legal avenues of relief that might not be apparent to him or his attorney. By definition, this will involve situations where the alien does not have the wherewithal to make a complete showing of eligibility. We read the "apparent eligibility" standard of 8 C.F.R. § 242.17(a) to mean that where the record, fairly reviewed by an individual who is intimately familiar with the immigration laws – as IJs no doubt are – raises a reasonable possibility that the petitioner may be eligible for relief, the IJ must advise the alien of this possibility and give him the opportunity to develop the issue.

---

[4]The regulations were restructured in 1998, after which § 1240.11 came into effect.

7

*Id.* at 423. The relief sought by the respondent in *Moran-Enriquez* was 212(h) relief, a form of relief "enumerated in this paragraph" as required by the old § 242.17.[5]

While *Moran* and other earlier Ninth Circuit cases discussed the due process obligation of IJs within the context of the federal regulation, later cases have not been so limited. While no case has presented the specific question before this Court -- whether a form of relief enumerated outside of Title 8, Chapter V falls within the ambit of an IJ's due process obligation to inform -- neither has any case explicitly limited that obligation. Instead, the Ninth Circuit has expansively interpreted the obligation to inform, and has grounded it in the Due Process Clause of the Fifth Amendment, rather than mooring it in a federal regulation. In *United States v. Arrieta*, 224 F.3d at 1079 (9th Cir. 2000), the Ninth Circuit, again finding a due process violation where an IJ failed to inform the alien of a right to relief,[6] made no reference to the regulation. The court stated that,"[w]here the record contains an inference that the petitioner is eligible for relief from deportation, the IJ must advise the alien of this possibility and give him the opportunity to develop the issue." *Id.*; *see also U.S. v. Muro-Inclan*, 249 F.3d 1180, 1184 (9th Cir. 2001) ("When the record before the Immigration Judge raises a reasonable possibility of relief from deportation under this provision [212(h)], it is a denial of due process to fail to inform an alien of that possibility at the deportation hearing.").[7]

More recently, in *United States v. Melendez-Castro*, 2012 WL 130348 (9th Cir. Jan. 18, 2012), the court explained that the requirement to "inform" an alien means "meaningfully advise" the alien of the right to seek relief. *Id.* at *2 (finding a due process violation where the IJ informed the alien of his right to voluntary departure, but "almost in the same breath told him that he would not get the relief if he applied for it because he had a criminal record.") The court located the obligation to inform in the

---

[5]The "paragraph" of § 242.17 discussed adjustment of status under section 245 of the Act; section 212(h) contained requirements for a waiver of excludability when an alien applied for adjustment of status under section 245. *Bui v. I.N.S.*, 76 F.3d 268, 270 (9th Cir. 1996).

[6]There, 212(h) relief for family hardship.

[7]*Muro-Inclan* cites to *Arrieta*, which in turn cites *Moran.*

8

"Due Process Clause of the Fifth Amendment." *Id.* at *2.[8]

This Court finds that the obligation of IJs to inform aliens of potential relief includes an alien's apparent eligibility for a U-Visa. Congress created the "U" nonimmigrant classification for qualifying victims of certain criminal activity with the enactment of the Victims of Trafficking and Violence Protection Act of 2000 ("VTVPA"), Public L. No. 106-386, Div A, 114 Stat. 1464 (Oct. 28, 2000). According to Congress,

> The purpose of this section is to create a new nonimmigrant visa classification that will strengthen the ability of law enforcement agencies to detect, investigate, and prosecute cases of domestic violence, sexual assault, trafficking of aliens, and other crimes described in section 101(a)(15)(U)(iii) of the Immigration and Nationality Act committed against aliens, while offering protection to victims of such offenses in keeping with the humanitarian interests of the United States. This visa will encourage law enforcement officials to better serve immigrant crime victims and to prosecute crimes committed against aliens.

VTVPA, Pub.L. 106-386 at § 1513(a)(2)(A). The U-Visa is not an arcane or esoteric form of relief. Congress set the annual issuance of such visas at 10,000, not including the spouses, children or parents of U-Visa recipients. 8 U.S.C. § 1184(p)(2). According to the Resuleo's immigration expert, "potential and pending U Visa applicants frequently come before immigration courts and IJs routinely have to make decisions in these cases." Lawrence Third Supp. Decl., ¶ 1. The statute governing U-Visas includes an obligation that the Attorney General "and other government officials, where appropriate, shall provide those aliens with referrals to nongovernmental organizations to advise the aliens regarding their options while in the United States and the resources available to them." 8 U.S.C. § 1184(p)(3). Congress contemplated that those eligible for U-Visas be made aware of their eligibility.

Moreover, the Ninth Circuit has expressed particular concern with proceedings involving aliens who, like Resuleo, are often unrepresented. As the Ninth Circuit has stated,

> Because aliens appearing pro se often lack the legal knowledge to navigate their way successfully through the morass of immigration law, and because their failure to do so successfully might result in their expulsion from this country, it is critical that the IJ "scrupulously and conscientiously probe into, inquire of, and

---

[8] To the same effect is the recent unpublished memorandum in *U.S. v. Rodriguez-Arroyo*, 2012 WL 363064 (9th Cir. Feb. 6, 2012) ("Rodriguez was deprived of due process during the 2005 deportation hearing because, like the defendant in *Melendez-Castro*, he was advised of the availability of voluntary departure, but 'was not meaningfully advised of his right to seek' such relief or to file an application seeking it." *Id.* at *1.

9

explore for all the relevant facts."

*Pangilinan v. Holder*, 568 F.3d 708, 709 (9th Cir. 2009) (*citing Agyeman v. INS*, 296 F.3d 871, 877 (9th Cir. 2002)). In that vein, IJs are provided with a "Benchbook" that requires them to "[e]xamine the respondent to determine what remedies against deportation may be available for him or her." *See* Lawrence Second Supp. Decl. ¶ 6 (citing Immigration Judge's Benchbook, "Master Calender Checklist for the Immigration Judge, The Pro Se Respondent.") No mention is made limiting such remedies to those enumerated in Chapter V of the C.F.R.

The Court recognizes that IJs are overburdened and, as the *Moran* court stated, "discharge an important and difficult responsibility under conditions that are less than ideal." 884 F.2d at 423. However, U-Visas are a relatively common form of relief that should trigger an IJ's notice when facts so present themselves. "It is in this situation that the IJ's expert attention to the facts of a particular alien's case can make the difference between pursuing an available avenue of relief and missing it altogether." *Id.* The Court finds that U-Visas fall within the due process obligations of IJs to inform those before them of potential relief from deportation.

### 2.      Apparent eligibility and plausibility of relief

Having found that IJs must inform aliens of potential U-Visa eligibility, two related questions must be answered: was Resuleo apparently eligible for that relief, and was it plausible she would receive it. "[W]here the record, fairly reviewed by an individual who is intimately familiar with the immigration laws – as IJs no doubt are – raises a reasonable possibility that the petitioner may be eligible for relief, the IJ must inform the alien of this possibility and give him the opportunity to develop the issue." *U.S. v. Muro-Inclan*, 249 F. 3d 1180, 1183 (9th Cir. 2001) (*citing Moran*, 884 F.2d at 423). Immigration Judges "are not expected to be clairvoyant; the record before them must fairly raise the issue." *Id.* Failure to so inform the alien is a denial of due process that invalidates the underlying deportation proceeding. *Id.* (citing *Arrieta*, 224 F.3d at 1079.)

10

#### a. Apparent eligibility

Resuleo argues that she was "apparently eligible" for a U-Visa, but was not so informed by the IJ. Def.'s Mot. at 10, 16. Pursuant to 8 U.S.C. § 1101(a)(15)(U), "[a]n alien who is a victim of a 'qualifying crime' and who cooperates with law enforcement is eligible for temporary 'U' non-immigrant status." *Ramirez-Sanchez v. Mukasey,* 508 F.3d 1254, n.1 (9th Cir. 2007). The relevant requirements for a U-Visa are set forth in 8 U.S.C. § 1101(a)(15)(U)(I):

> (I) the alien has suffered substantial physical or mental abuse as a result of having been a victim of criminal activity described in clause (iii);
>
> (II) the alien (or in the case of an alien child under the age of 16, the parent, guardian, or next friend of the alien) possesses information concerning criminal activity described in clause (iii); [and]
>
> (III) the alien (or in the case of an alien child under the age of 16, the parent guardian, or next friend of the alien) has been helpful, is being helpful, or is likely to be helpful to a Federal, State, or local law enforcement official, to a Federal, State, or local prosecutor, to a Federal or State judge, to the Service, or to other Federal, State, or local authorities investigating or prosecuting criminal activity described in clause (iii).

8 U.S.C. § 1101(a)(15)(U)(I). Clause (iii) sets forth the applicable crimes, and includes "rape, torture, trafficking, incest, domestic violence, sexual assault, abusive sexual contact, [and] prostitution," among other crimes. The list of qualifying crimes "represents the myriad types of behavior that can constitute domestic violence, sexual abuse, or trafficking, or are crimes of which vulnerable immigrants are often targeted as victims." 72 Fed. Reg. 53015.

Resuleo argues that she was apparently eligible for a U-Visa because of the attempted rape by and subsequent arrest of her uncle when she was 14 years old. The government counters that Resuleo was not eligible for a U-Visa because she does not meet the "helpfulness" prong of the statute due to her recantation of the crime. IJ Murry found that "before the case went to trial, Respondent's aunt prevailed on her to tell the police that the uncle had not tried to rape her, and as a result, charges against the uncle were dismissed." West Decl., ¶ 14. Thus, according to the government, "even if [Resuleo] was initially helpful in reporting the crime to the police, her subsequent failure to provide assistance by recanting rendered her ineligible for a U-Visa." Pl.'s Opp. at 8.

Whether an alien is apparently eligible for a U-Visa despite having recanted the facts of a qualifying crime is a close question. The federal register and subsequent regulation shed some light on

11

the question. In the September 17, 2007 promulgation of the interim rule, U.S. Citizenship and Immigration Services ("USCIS") stated that it

> interprets "helpful" to mean assisting law enforcement authorities in the investigation or prosecution of the qualifying criminal activity of which he or she is a victim. USCIS is excluding from eligibility those alien victims who, after initiating cooperation, refuse to provide continuing assistance when reasonably requested. USCIS believes that the statute imposes an ongoing responsibility on the alien victim to provide assistance, assuming there is an ongoing need for the applicant's assistance.

72 Fed. Reg. 53015. This interpretation manifested itself in the eventual regulation through the requirement that "since the initiation of the [victim's] cooperation, [she] has not refused or failed to provide information and assistance reasonably requested." 8 C.F.R. § 214.14(b)(3). On its face, the regulation's requirement of ongoing helpfulness cuts in favor of the government's interpretation that recanting defeats helpfulness.

Resuleo raises three opposing arguments. The first is that the relevant regulation -- 8 C.F.R. § 214.14 -- requires that a U-Visa petitioner's application include a certification by a "certifying agency" (including federal, state, or local law enforcement) that the applicant has been, is being, or is likely to be helpful to an investigation or prosecution of that qualifying criminal activity. 8 C.F.R. § 214.114(c)(2)(I). According to Resuleo, "it is never within the purview of the IJ to determine helpfulness in the context of a U Visa; rather whether the applicant meets the helpfulness requirement is a case-by-case determination for the relevant law enforcement agency to make." Def.'s Reply at 4. Therefore, according to defendant's immigration expert, once a respondent "presents some indicia of the requirements for a U Visa, like Ms. Resuleo did," the IJ must advise her of her apparent eligibility for the U-Visa and leave it up to the proper certifying agency to decide.

Secondly, Resuleo cites to an unpublished decision by the Administrative Appeals Office ("AAO"), the administrative appellate body to USCIS. *See* Lawrence Supp. Decl., Ex. A (Vermont Service Center, Jul. 26, 2010). There, the victim had been in contact with law enforcement officials on at least two occasions due to domestic violence issues with her spouse. However, when the police intervened in an abusive altercation, "she told the police not to arrest him because she did not want to become homeless and she was afraid that he would hurt one of their sons because he had threatened to take such action if he was ever sent to jail." *Id.* The Director of the Vermont Service Center, the body

12

in charge of processing U-Visas, found that the victim had therefore not been helpful in the investigation or prosecution of the qualifying crime. The AAO reversed:

> The statute and regulations do not require the petitioner to be helpful in both the investigation and the prosecution of the qualifying criminal activity, or for the investigation or prosecution with which the alien assists to result in a criminal conviction. It is only the alien's assistance in the investigation or prosecution which is required. The petitioner's reluctance to aid in the prosecution of her spouse for domestic violence does not negate her assistance in the investigation into her spouse's criminal activity. The preponderance of the relevant evidence of record demonstrates that the petitioner has been helpful in the investigation of qualifying criminal activity, as required by section 101(a)(15)(U)(i)(III) of the Act.

*Id.* at 6-7. Similarly, Resuleo argues, she alerted the police to the attempted rape right after it occurred, and identified her uncle before she was taken to the hospital. Her later "reluctance" to aid in prosecuting the crime should not be a bar under § 101(a)(15)(U)(i)(III) of the Act.

Resuleo's final argument is that helpfulness, in this case, "should be viewed through the lens of a fourteen-year old girl." Def.'s Reply at 5, n.3 (*citing* Lawrence Supp. Decl. ¶ 3.) Resuleo points to the statute's exception to the helpfulness requirement for victims who are under sixteen years of age. Section 1101(a)(15)(U)(i)(III) requires that "the alien (or in the case of an alien child under the age of 16, the parent guardian, or next friend of the alien) has been helpful, is being helpful, or is likely to be helpful to a Federal, State, or local law enforcement official . . ." According to defendant's expert, this "acknowledges that crime victims under the age of sixteen may be incapable of being helpful in the same way as an adult" and that many law enforcement agencies "are receptive to taking age into account in determining whether a particular applicant was helpful." Lawrence Supp. Decl ¶ 3.

While it is a close question, the Court finds that Resuleo was apparently eligible for a U-Visa. As an initial matter, it is plausible that a law enforcement agency would find it helpful that Jorge Resuleo was brought to their attention, despite the fact that the rape charges were dropped - indeed, he was eventually deported. Secondly, the Court finds that the statute and regulations explicitly contemplate a lower threshold of helpfulness for victims under 16, particularly as applied to these facts. The interim rule states that, "An exception to the helpfulness requirement applies to alien victims who are under 16 years of age. Such alien victims can satisfy the helpfulness requirement if their parent,

guardian, or next friend provides the required assistance." 72 Fed. Reg. 53015.[9] Here, Resuleo was 14 years old when the attempted rape occurred. She then called the police from a neighbor's house. Later, her aunt -- wife of the attempted rapist, and precisely one of the people contemplated by the statute to assist Resuleo in *helping* the prosecution of the crime --"prevailed" on her to recant the story. West Decl. ¶ 14 (IJ Murry). Resuleo's willingness to help was inhibited by a family member, which rendered it difficult, if not impossible, to complete the statutorily-required helpfulness.

These facts meet, at the least, a showing of apparent eligibility for a U-Visa. The certifying law enforcement agency could then determine whether or not Resuleo was, in fact, helpful. Because she was apparently eligible for a U-Visa, the IJ was obligated to inform her of that fact. The failure to inform Resuleo of relief for which she was apparently eligible was a violation of her due process rights. *Arrieta*, 224 F.3d at 1076.

### b. Plausible grounds for relief

In order to establish fundamental unfairness, one of the three necessary prongs of a § 1326(d) dismissal, Resuleo must show not only that her due process rights were violated, but also that the deprivation of due process prejudiced her. *Arrieta*, 224 F.3d at 1079. In order to establish prejudice, Resuleo need not show that she would have actually have been granted relief; instead, she must show that it was "plausible" she would receive such relief. *Id.* The Court has already found that Resuleo was a victim of a qualifying crime, and that it was plausible she would receive the requisite certificate of helpfulness. *See supra*, Sec. II.A. The question is whether she would have been barred from relief otherwise.

The government argues that Resuleo was ineligible for a U-Visa, absent waiver, because she was convicted of a felony involving moral turpitude. Pl.'s Opp. at 8 *(citing* 8 U.S.C. § 1182(a)(2)(A)). The government is presumably referring to Resuleo's conviction for felony attempted grand theft from a person, with a misdemeanor gang enhancement. However, the Secretary of Homeland Security may

---

[9]Under the regulation, a "next friend" is an individual who appears in a lawsuit to act for the benefit of an alien who is under the age of 16 or is incompetent. 8 C.F.R. 214.14(a)(7). The next friend is not a party to the legal proceeding and is not appointed as a guardian.

14

waive grounds of inadmissibility for those eligible for U-Visas "if the Secretary of Homeland Security considers it to be in the public or national interest to do so." 8 U.S.C. § 1182(d)(14). The government argues that "it is not plausible that Resuleo would obtain such a waiver [] as there is no public or national interest in her being admitted as a victim of a crime that she later denied occurred, and for which prosecution is no longer a possibility." Pl.'s Opp. at 8.

However, given the facts of this case, the Court disagrees and finds that it is plausible that Resuleo would obtain such a waiver. According to defendant's expert, the U-Visa "is often described as having one of the most 'forgiving' waiver standards compared to other forms of relief." Lawrence Supp. Decl. ¶ 3(b)(ii). She states that "the majority of individuals that I have represented in U Visa cases have had criminal records. To date, each application has been approved. Even most aggravated felonies in immigration law can be waived for a U Visa." *Id.* Here, Resuleo presents sympathetic facts that make it plausible the Secretary would exercise her discretion. As described above, the attempted rape occurred when Resuleo was only 14. Resuleo's crime -- felony attempted grand theft with a misdemeanor gang enhancement -- was serious; however, it was followed by Resuleo's assistance to ICE in gang investigations, including wearing a wire. Resuleo's initial reporting of Jorge Resuleo may have assisted in his deportation from the United States. It is plausible the Secretary would find it in the public or national interest to waive Resuleo's ineligibility. Resuleo therefore meets the second requirement to show fundamental unfairness -- plausibility of relief.

### 3. First and second prongs of § 1326(d)

Resuleo has thus made the requisite showing under subsection (iii) of § 1326(d) -- fundamental unfairness -- by demonstrating a violation of her due process rights and resulting prejudice. Subsections (i) and (ii) require a showing that she exhausted all remedies available to her to appeal the removal order, and that removal proceedings deprived her of the opportunity for judicial review, respectively. The Ninth Circuit has held that the failure of an IJ to inform an alien of eligibility for relief from removal exempts the alien from the exhaustion requirement, the first prong. *See U.S. v. Ubaldo-Figuero*, 364 F. 3d 1042, 1049 (9th Cir. 2004) (where the IJ failed to inform an alien of eligibility for relief, the alien is exempted from the exhaustion bar because "his waiver of his right to appeal was not

15

sufficiently considered and intelligent under the Due Process Clause of the Fifth Amendment.") Failure to inform also necessarily deprives the alien of judicial review, the second prong. *See id; see also United States v. Ortiz-Lopez*, 385 F.3d 1202, 1204 (9th Cir. 2004) ("[A]n alien who is not made aware that he has a right to seek relief necessarily has no meaningful opportunity to appeal the fact that he was not advised of that right.")

Resuleo has thus made the requisite showing under § 1326(d) to sustain her attack on the underlying removal order as legally inadequate. Her 2008 removal order therefore cannot stand as a predicate for a § 1326 charge for illegal reentry. Under Ninth Circuit precedent, her 2010 reinstatement of that removal therefore fails as well.[10] *See United States v. Arias-Ardennes*, 597 F.3d 972, 978 (9th Cir. 2010) ("The removal was not legally sound. Therefore, none of the reinstatement is legally any stronger than the original order.") Because neither removal order can form the predicate basis for a § 1326 illegal reentry charge, defendant's motion to dismiss the indictment is GRANTED.

**IT IS SO ORDERED.**

Dated: March 7, 2012

SUSAN ILLSTON
United States District Judge

---

[10] Because the reinstatement of removal cannot serve as a predicate for the instant § 1326 indictment, the Court need not address Resuleo's attack on that removal or her eligibility for relief under the Convention against Torture.

16